# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00210-CV

**Kenneth R. Jacob and Blair Jacob, Appellants**

**v.**

**International Cellulose Corporation, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-000904, HONORABLE JOSEPH H. HART, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this property damage case arising from a house fire, appellants Kenneth R. Jacob and Blair Jacob argue that the trial court erred in granting summary judgment for appellee International Cellulose Corporation (ICC) and in excluding the affidavit of the Jacobs' expert witness. Because we conclude that the Jacobs failed to raise a genuine issue of material fact as to each of their causes of action and that it was not an abuse of discretion to exclude their expert's affidavit, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Jacobs' home and all of its contents were destroyed by fire. At approximately 9:30 p.m. on November 29, 2002, the Jacobs discovered the fire in their attic and called the fire department. The fire department arrived and, after extinguishing the fire, removed Sheetrock and layers of smoldering insulation and used thermal imaging to detect remaining "hot spots." Damage

from the fire was concentrated in the attic, an office, hallway, and bathroom. In the early morning hours of November 30, 2002, the fire reignited and the house was completely destroyed. The Travis County fire investigator determined that the initial cause of the fire was electrical and that the rekindling was due to the reignition of cellulose insulation in the attic.

Prior to the fires, the Jacobs had made home improvements. In December 1998, they contracted with Alexander Builders to remodel their house, and the scope of the work included electrical rewiring. Alexander Builders subcontracted the electrical work to Neal Wood Electric. The remodel was completed in late 1999. In 2001, the Jacobs contracted with Enercheck Insulation, Inc., to install insulation in their attic, and the product used by Enercheck for the project was cellulose insulation[1] manufactured by ICC. It is undisputed that Enercheck installed the ICC cellulose insulation over an existing layer of cellulose insulation.

The Jacobs filed suit against Henry Miller, individually and d/b/a Alexander Builders; Neal Wood, individually and d/b/a Neal Wood Electric; Enercheck; and ICC; however, only the claims against ICC are currently before this Court, and we will limit our discussion accordingly.[2] The Jacobs' fourth amended original petition presented causes of action against ICC for product liability, negligence, and breach of warranty. Specifically, they alleged defective manufacturing,

---

[1] Cellulose insulation is made from recycled newspaper and treated with fire retardants and insect protection.

[2] The trial court also granted summary judgment in favor of Neal Wood, individually and d/b/a Neal Wood Electric. The Jacobs separately appealed that ruling to this Court, and their appeals against Wood and ICC were consolidated. The appeal against Wood was dismissed, however, for lack of jurisdiction. *See Jacob v. International Cellulose Corp.*, No. 03-06-00210-CV (Tex. App.—Austin Nov. 22, 2006) (order), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/HTMLOpinion.asp?OpinionID=15423.

2

defective design, negligent manufacturing, negligent design, negligent marketing and warning, negligent testing and inspection, negligent installation and training, breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.

After extensive discovery, ICC filed two motions for summary judgment. In the first motion, ICC asserted that (i) federal law preempted the Jacobs' marketing and design defect claims; (ii) ICC complied with federal regulations and was entitled under section 82.008 of the civil practice and remedies code to a rebuttable presumption that it was not liable for any injury "caused by some aspect of the formulation, labeling, or design" of its product, *see* Tex. Civ. Prac. & Rem. Code Ann. § 82.008(a) (West 2005); and (iii) the Jacobs had no evidence of causation, which is an element of each of their alleged causes of action. In the second motion, ICC maintained that, because there was no evidence as to certain required elements, or alternatively, because ICC had established as a matter of law that the Jacobs could not prove certain required elements, ICC was entitled to summary judgment on the Jacobs' claims for manufacturing defect, negligent testing and inspection, negligent training and installation, and breaches of express and implied warranties. The second motion also asserted that use of res ipsa loquitur was not appropriate in this case. Both of ICC's motions included summary judgment evidence.

The Jacobs filed separate responses, including summary judgment evidence, to both motions. Attached to both responses was the affidavit of one of the Jacobs' experts, Robert Brady Williamson. ICC objected to Williamson's affidavit on the grounds that the affidavit addressed issues about which Williamson was not designated to testify, did not address causation, and was

3

not competent expert testimony because it made conclusory allegations and was not credible or free from contradictions.

The trial court sustained ICC's objections to the Jacobs' summary judgment evidence and granted both of ICC's motions for summary judgment. The court did not specify which ground or grounds it relied upon in granting the motions. The claims against ICC were severed from the claims against the other defendants, and this appeal followed.

## ANALYSIS

On appeal, the Jacobs argue that the trial court erred in finding that their claims against ICC were preempted by federal law and in granting summary judgment in favor of ICC as to the Jacobs' state law claims. They also contend that the trial court erred in excluding their expert's affidavit.

### *Standard of Review*

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). ICC moved for summary judgment on both no-evidence and rule 166a(c) summary judgment grounds; however, because we conclude that ICC satisfied the burden for a no-evidence summary judgment, we discuss only that standard of review. A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the

nonmovant to produce summary judgment evidence raising a genuine issue of material fact on the challenged elements, and the court must grant the motion if the nonmovant fails to do so. Tex. R. Civ. P. 166a(i). To defeat the motion for summary judgment, the nonmovant must present more than a scintilla of probative evidence. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.* When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, as here, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

We review the admissibility of expert testimony using the same standard on summary judgment as at trial. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). However, as an appellate court, we do not consider the admissibility or inadmissibility of the evidence *de novo*. Instead, a trial court has broad discretion in determining whether expert testimony is admissible, and its ruling will be reversed only if that discretion is abused. *Mack Trucks v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). A court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

5

*Causation*

The Jacobs brought causes of action against ICC in strict liability, negligence, and breach of warranty, all of which require proof of causation. *See Mack Trucks*, 206 S.W.3d at 582. The test for strict liability claims is producing cause, while negligence and breach of warranty claims require a showing of proximate cause. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995) (strict liability and negligence); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999) (strict liability and breach of warranty); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a)(2) (West 2005) (requiring claimant in design defect case to prove by a preponderance of evidence that defect was a producing cause). A producing cause is an efficient, exciting, or contributing cause, which in a natural sequence of events, produces injuries or damages. *Union Pump Co.*, 898 S.W.2d at 775. Proximate cause consists of both cause in fact and foreseeability. *Id.* Common to both proximate and producing cause is causation in fact, *id.*, the test for which is whether the negligent act or omission was a substantial factor in bringing about the harm and without which the harm would not have occurred. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). A finding of cause in fact may be based on either direct or circumstantial evidence, but cannot be supported by mere conjecture, guess, or speculation. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

In its first motion for summary judgment, ICC asserted that, because there were two layers of cellulose insulation installed in the Jacobs' house, the Jacobs had no evidence that ICC's product—rather than the original layer of insulation—smoldered and caused the second fire. In support of its motion, ICC attached the deposition testimony of the Jacobs' experts and a Travis

6

County fire investigator. Each witness, with one exception, testified that he could not identify which insulation caused the fire to reignite. Mack Fuller, a certified fire investigator, testified that

> [k]nowing the fact that there's two layers of cellul[ose] insulation, I have no way of telling you which one was which or where—you know, it certainly would stand to reason that the one that's closer to the Sheetrock or to the lower level would probably have ignited before the one that was blown in above it.

In addition, Fuller stated that he could not rule out that wood rekindled the fire or that someone set the fire. Andrew Armstrong, who had tested a product sample (although he did not know who manufactured the sample), stated that he had no opinion as to the cause of either the first or second fire. Lem Biggs, the Travis County fire investigator, testified that he was unaware there were two kinds of cellulose insulation in the attic and that he did not know which one might have smoldered. The Jacobs' final expert, Robert Brady Williamson, did not distinguish between the two insulations; instead, he testified during deposition that *both* insulations caused the second fire: "I think they both smoldered, and I don't think you could point the finger at either one of them as being the primary one. They both smoldered."

In response to ICC's motion for summary judgment, the Jacobs proffered, as evidence of causation, Williamson's deposition testimony that both insulations caused the fire and a five-page affidavit from Williamson.[3] ICC objected to Williamson's affidavit, arguing that it addressed issues about which Williamson was not designated to testify, did not address causation, and was not

---

[3] Also attached to the Jacobs' response was Biggs's incident report listing the cause of the second fire as rekindling of cellulose insulation and the deposition testimony of Gary Langshaw, an assistant fire chief who witnessed smoldering insulation after the first fire.

7

competent expert testimony because it made conclusory allegations and was not credible or free from contradictions. The trial court sustained ICC's objections and, thus, did not consider the affidavit when granting ICC's motions for summary judgment. On appeal, the Jacobs assert that the trial court erred in excluding Williamson's affidavit.

The only evidence presented by the Jacobs that would suggest that ICC's product was a cause of their house fire comes from Williamson. Thus, whether the Jacobs raised a material fact issue as to causation turns on whether probative weight can be given to Williamson's expert testimony. A no-evidence summary judgment is proper if the only evidence offered by the nonmovant to prove an essential element of the claim cannot be given weight by the court. *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 240 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The burden is on the proponent of expert testimony to show that the testimony is both relevant to the issues in the case and based upon a reliable foundation. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). To be relevant, the evidence must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," and to be reliable, the opinion must be based on principles or techniques that are "grounded 'in the methods and procedures of science.'" *Id.* at 556-57 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To determine reliability, the supreme court has stated that a trial court should undertake a "rigorous examination" of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand. *Mack Trucks*, 206 S.W.3d at 579.

8

In *Robinson*, the supreme court listed six nonexclusive factors a trial court may consider in making the threshold determination of admissibility: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses that have been made of the theory or technique. 923 S.W.2d at 557. These factors may not "fit" all types of expert testimony; however, that does not relieve the court of its responsibility to evaluate reliability of the testimony. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 724 (Tex. 1998).

Conclusory statements made by an expert witness are insufficient summary judgment evidence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991). It is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law—"a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). The expert must explain the basis of his statements to link his conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). There cannot be too great an "analytical gap" between the expert's opinion and the facts upon which he relies. *Gammill*, 972 S.W.2d at 726-27 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). An expert who is trying to determine causation should carefully consider alternative causes; the failure to rule out other causes of the damage renders the opinion little more than speculation. *Robinson*, 923 S.W.2d at 559.

### 1. *Williamson's deposition testimony*

In his deposition testimony, Williamson stated that *both* insulations caused the second fire at the Jacobs' house. During the deposition, ICC's attorney questioned Williamson about how the rekindling occurred and which insulation caused it:

Q.    Why do you think that the underlying smoldering insulation wouldn't have self-extinguished? . . .

A.    We had the fire.

. . . .

Q.    So because it happened, it must not have. . . . Is that your opinion?

A.    That's correct.

. . . .

Q.    [L]et me give you a hypothesis. The old insulation smoldered and caused a second fire. Can you disprove that?

A.    Yes. I just don't think there is, they, all cellulose insulations smolder, and they have a propensity to smolder, and I don't think you can distinguish between the two.

Q.    In reality, Dr. Williamson, wouldn't you agree, you have no idea which insulation particles smoldered and then ignited and caused the second fire . . . . Is there any possible way to tell?

A.    They both could have smoldered.

Q.    I'm asking you which one smoldered and caused the second fire in this case, specifically.

. . . .

A.    I don't think we know.

ICC's attorney also asked about what facts Williamson was relying on to support his opinion:

> Q.     What definite evidence are you relying on in stating that no other material could have caused the second fire? I'm—your definite evidence, if you could list it for me, I would appreciate it.

> A.     Well, what my opinion is is that the reasonable scientific certainty, the insulation caused it. I have identified other potential causes, like arson. I haven't ruled that out today. I haven't ruled out arson . . . . To a reasonable scientific certainty, I have, because I know the propensity of insulation.

> . . . .

> Q.     What evidence do you have or what facts are you relying on to support your opinion that the International Cellulose product, as opposed to the first layer of insulation, caused the second fire?

> A.     We don't have any, there is no way to distinguish between the two.

> Q.     Okay. So if there is no way to distinguish between the two, then there is also no way to say that one, as opposed to the other, caused the second fire?

> A.     I'm not distinguishing between one as opposed to the other.

> Q.     Okay. So is it fair to say that we don't know if the second fire was caused by the first layer or the second layer of insulation?

> A.     I think that both contributed.

> Q.     You think they could have, or they actually did?

> A.     I think they did. . . . I'm saying that those products both had the propensity to smolder. One doesn't have a greater propensity. They both smolder, and they had surface contact over a large area. They are both going to smolder, and they caused the rekindling.

> . . . .

> Q.     Do you know if the smoldering insulation traveled through the International Cellulose product?

11

A.     I think so.

Q.     Okay.  How do you know that?

A.     The two are going to act the same.

Williamson's statement that both insulations smoldered and caused the Jacobs' second fire did not amount to more than mere speculation.  Williamson stated that the insulation did not self-extinguish, because "[w]e had the fire."  When asked specifically which layer smoldered and caused the second fire, he stated, "I don't think we know," and when asked what evidence he was relying on to determine that ICC's product smoldered as opposed to the underlying layer of insulation, he stated, "We don't have any, there is no way to distinguish between the two. . . .  I'm not distinguishing between one as opposed to the other."  The basis for his opinion appears to be that because the Jacobs' attic contained cellulose insulation and because all cellulose insulation has a propensity to smolder, the second fire must have been caused by both layers of cellulose insulation.  There is an analytical gap, however, between stating that cellulose insulation has a propensity to smolder and concluding that ICC's product actually smoldered and caused the fire.  For instance, even assuming both layers of insulation smoldered after the first fire, the record reveals that the fire department removed large portions of smoldering insulation and could have removed all of the smoldering ICC insulation.  Thus, it appears equally plausible that the smoldering began solely in the underlying layer of insulation and that without smoldering in that layer the fire would not have reignited.    We  conclude  that  the  "analytical  gap"  between  the  facts  Williamson  relied upon—cellulose insulation's presence in the Jacobs' attic and its propensity to smolder—and his opinion that both insulations caused the second fire is too great.  *See Gammill*, 972 S.W.2d at 727.

12

In addition, Williamson's opinion does not adequately address alternative causes of the fire. He stated that he had considered other potential causes, specifically mentioning arson and that arson could not be ruled out, but that he determined to a "reasonable scientific certainty" that the insulation caused the fire. Williamson's assurance that he had determined to a "reasonable scientific certainty" that insulation caused the rekindling is not sufficient without some explanation of the basis for his opinion. *See Schaefer v. Texas Employers' Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex. 1980) ("To ignore the substance of [the expert's] testimony and accept his opinion as 'some' evidence simply because he used the magic words 'reasonable probability' effectively removes this Court's jurisdiction over any case requiring expert opinion testimony."). Williamson did not name any other potential causes, nor did he explain how he ruled out the other potential causes.

In this case, while circumstantial evidence may be sufficient to point to *some* cellulose insulation as the cause of the second fire, that is not enough. Because there were two types of cellulose insulation in the Jacobs' house, there must also be some evidence that it is more likely than not that the insulation manufactured by ICC was a cause of the fire. *See Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989) (requiring plaintiff to prove which defendant supplied product causing injury); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla . . . if jurors would have to guess whether a vital fact exists."). Williamson does not point to any evidence supporting his theory that both insulations caused the fire. When ICC's attorney asked Williamson how he can be sure that the smoldering did not take place solely in the underlying layer of insulation, Williamson stated that the two layers were indistinguishable. While proving

13

causation may be difficult that does not excuse the plaintiff from introducing some evidence of causation. *Schaefer*, 612 S.W.2d at 205. Williamson's failure to rule out other causes of the fire renders his opinion little more than speculation. *See Robinson*, 923 S.W.2d at 559.

Because there is too great an "analytical gap" between Williamson's opinion and the facts he relied upon and because Williamson failed to rule out other causes of the fire, we conclude that the trial court did not err in finding that his deposition testimony did not constitute more than a scintilla of probative evidence to raise a genuine issue of material fact as to causation.

### 2. *Admissibility of Williamson's affidavit*

The trial court excluded the only other evidence the Jacobs submitted to show causation, an affidavit from Williamson. We review the trial court's exclusion of the affidavit for an abuse of discretion. *Mack Trucks*, 206 S.W.3d at 578.

In his affidavit, which was filed after ICC filed its summary judgment motions, Williamson does not discuss the theory he presented in his deposition testimony that both insulations smoldered and caused the fire. Instead, after recounting his qualifications, Williamson avers that ICC had a duty to warn installers that it is unsafe to allow old cellulose insulation to remain in buildings, a duty to train installers in proper installation techniques, and a duty to instruct installers to warn consumers that existing cellulose insulation should be removed before installing ICC's product. The affidavit then introduces a new theory of how the fire occurred—"[t]he installation of new insulation over old, deteriorated and contaminated insulation created a hazardous condition in the Jacobs' attic" and the new cellulose insulation "prevented detection of the smoldering sub-layers of insulation in the Jacobs' attic after the first fire."

14

One ground ICC relied upon in challenging Williamson's affidavit was that it was not competent expert testimony because it contained conclusory allegations and was not credible or free from contradictions. *See Anderson*, 808 S.W.2d at 55. A review of Williamson's affidavit reveals that it suffers from the same problems as his deposition testimony. Williamson does not provide any evidentiary support for his assertion that new cellulose insulation prevented detection of smoldering sublayers of insulation nor does he rule out alternative causes of the fire. Especially when viewed in light of his earlier deposition testimony that smoldering took place in both layers of cellulose insulation, we cannot say that the trial court abused its discretion in excluding Williamson's affidavit.

**CONCLUSION**

We conclude that the Jacobs failed to produce evidence raising a genuine issue of material fact showing that ICC's insulation was a cause in fact of the fire that destroyed their house. Because causation is a required element of each of the Jacobs' claims, the trial court properly granted summary judgment, and we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   April 27, 2007

15