IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00022-CV

 

James Dewbre,

                                                                                    Appellant

 v.

 

Anheuser-Busch, Inc.,

                                                                                    Appellee

 

 

 



From the 220th District
Court

Hamilton County, Texas

Trial Court No. CV50372

 



MEMORANDUM  Opinion



 








            James Dewbre was
transporting beer for Anheuser-Busch, Inc.[1]
when the load shifted and his truck rolled over.  Dewbre sued Anheuser-Busch,
alleging that the trailer was improperly loaded.  The trial court granted Anheuser-Busch’s
no-evidence motion for summary judgment.  In a single point, Dewbre appeals the
granting of this motion, arguing that the evidence raises a genuine issue of
material fact as to whether the accident was proximately caused by
Anheuser-Busch’s negligence in loading the trailer.  We reverse and remand.

STANDARD OF REVIEW

We review a no-evidence summary judgment
under the same standard of review as a directed verdict.  See Mack Trucks,
Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex. 2006).  “We review the evidence
presented by the motion and response in the light most favorable to the party
against whom the summary judgment was rendered, crediting evidence favorable to
that party if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not.”  Id. at 582.  A
no-evidence summary judgment will be defeated if the non-movant produces some
evidence “raising an issue of material fact” on the elements challenged by the
movant.  Id.

NO-EVIDENCE SUMMARY
JUDGMENT

Dewbre contends that he provided expert
testimony, via the deposition testimony of both himself and DPS Trooper Steven
Schwartz, sufficient to raise a genuine issue of material fact and survive
summary judgment.  Anheuser-Busch argues that Dewbre failed to: (1) properly designate
experts; and (2) designate an expert who is qualified to testify to whether Anheuser-Busch
was negligent in loading the trailer or that such negligence caused the
roll-over.[2]
 Anheuser-Busch raised the improper designation argument in both its
no-evidence motion and a separate motion to strike, but did not obtain a
specific ruling on the issue.  Accordingly, the issue is not preserved for our
review.  See Page
v. State Farm Lloyds,
259 S.W.3d 257, 265-66 (Tex. App.—Waco 2008, pet. filed).  We may only consider whether Schwartz
and Debrew were qualified as experts.  Id. at 266.

Because the parties do not dispute that
expert testimony is required, we will assume without deciding that Dewbre was
required to present expert testimony to establish whether Anheuser-Busch was
negligent.  See Tamez, 206 S.W.3d at 583 (“Proof other than expert testimony
will constitute some evidence of causation only when a layperson’s general
experience and common understanding would enable the layperson to determine
from the evidence, with reasonable probability, the causal relationship between
the event and the condition.  Expert testimony is required when an issue
involves matters beyond jurors’ common understanding.”).

Dewbre’s Deposition Testimony

Dewbre testified that he has a
commercial driver’s license, has driven commercial vehicles for about twenty
years, and previously owned his own trucking company.  He has both classroom
and on-the-job training regarding accepting, securing, and driving loads.   He
has no formal training on weight distribution or requirements. 

Dewbre hauled numerous loads for
Anheuser-Busch in the two and a half years preceding the accident.  He is
familiar with Anheuser-Busch’s load configurations.  Most loads are a “double
11” configuration: “[e]leven pallets from where it starts to the end would be
22 pallets.”  He has had one “double 11” load shift, causing a pallet to fall
over.  Depending on the type of load, the manner of driving may need to be
modified.                      

In the past, cargo was “live-loaded”;
drivers actually helped load the cargo and gave instructions.  Dewbre has
supervised approximately twenty loads.  He typically loads the pallets “[s]ide
to side with void fillers,” a “piece of cardboard that unfolds and [] makes a
mesh” to “hold[] the pallets in place so they can’t leap, they can’t move.”  Most
cargo is now pre-loaded.  Dewbre secures the load to the “best of [his] ability.” 
This includes installing load locks, which “go[] against the sides and you jack
it up, and it has got pads on each end of it, keep it from slipping.”

At some point, Anheuser-Busch stopped
using void fillers and began stacking pallets seven or eight layers high,
causing them to fall or turn over.  On the day of the accident, Dewbre did not
inspect the load.  However, he was certain that there were no void fillers
because they are always listed on the bill of lading, but were not listed on
the day of the accident.  He observed that the load was shrink-wrapped and the
pallets were stacked about seven feet high.  He installed load locks.

At some point during transport, the
truck left the lane of traffic and crossed onto the shoulder.  When Dewbre
attempted to correct, the “beer hit the side of the trailer so hard that it
slapped the truck down,” like “being at the end of a bullwhip.”  He testified
that he has “pulled enough loads, [to] know when something is moving or
something is -- something is moving around, and it definitely got all shifted
up against the side.”

Dewbre opined that the lack of void
fillers caused the pallets to shift to the side, which caused the roll-over.  Void
fillers would have prevented both the shifting and the roll-over.  Because the
truck contained thirty feet of “open space,” Dewbre believed that
Anheuser-Busch should have “set the load down” instead of stacking the pallets
so high.  He concluded that Anheuser-Busch negligently loaded the beer by
failing to use void fillers and by stacking the pallets too high.

Trooper Schwartz’s Deposition Testimony

     Schwartz testified that he has been
a trooper for over five years and has completed Level 2 accident reconstruction
training.  He is not trained on loading a tractor-trailer, does not have a
commercial driver’s license, has never driven a commercial vehicle, is not
familiar with the standards for loading commercial vehicles, and does not know
about void fillers.  Although he did not actually load the trucks, Schwartz
grew up working at a grocery store unloading trailers and is familiar with “how
loads can shift and how they are normally loaded.”  He further testified that
he has “practical hands-on knowledge” about the affects of a shifting load.  He
testified that cattle must be “blocked correctly” or “can cause the trailer to
jerk or the whole thing to jerk because you got too much weight on the back
end, not enough weight on the tongue.”  As for flat-beds, “if you put too much
weight on the one side [] the trailer will whip.”  He testified that either a
load shift or road conditions can cause a roll-over.  He has seen four
accidents, two of which he investigated, where a tractor-trailer rig tipped
over because of a load shift.  

At the scene of Dewbre’s accident, Schwartz
observed several pallets of beer lying on the side of the trailer.  Some beer
had fallen out of the truck when the door was opened.  He believed that this
occurred because the beer had shifted.  He could not tell whether the pallets
had been secured and the condition of the cargo made it difficult to assess how
it had been loaded.  Schwartz opined that the truck “drifted off the roadway
and then attempted to correct itself,” but rolled over because of a “steep
incline in the bar ditch and a shift in its load.”  He gave no opinion as to
what caused the truck to drift off the roadway.  Nor could he provide an
opinion as to whether the cargo was either properly or improperly loaded.

Analysis

An expert must be qualified and his
opinion must be relevant and have a reliable foundation.  See Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001). 
An expert is qualified “by knowledge, skill, experience, training, or
education.”  Tex. R.
Evid. 702
Nonscientific expert
testimony may be considered unreliable if “‘there is simply too
great an analytical gap between the data and the opinion proffered.’”  Kerr-McGee Corp. v. Helton, 133 S.W.3d 245, 254 (Tex. 2004)
(quoting Gammill v. Jack Williams
Chevrolet, Inc.,
972 S.W.2d 713, 726 (Tex. 1998) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct.
512, 519, 139 L. Ed. 2d 508 (1997))).

There can be no doubt that Schwartz was
qualified to give an opinion that the shifting load caused the truck to
roll-over.  See Lingafelter
v. Shupe, No. 10-03-00113-CV, 2004 Tex. App. LEXIS 10355, at *13-14 (Tex. App.—Waco Nov. 17, 2004) (mem. op), rev’d on other grounds, 192 S.W.3d 577 (Tex.
2006) (“The opinion
of an investigating officer with level two reconstruction training is admissible”); see
also Ter-Vartanyan
v. R&R Freight, Inc.,
111 S.W.3d 779, 781-82 (Tex. App.—Dallas 2003, pet. denied) (finding officer
with training in accident investigation qualified to provide an expert opinion
as to the cause of a traffic accident).  However, he could not give an opinion as
to whether the load shifted because the cargo was improperly loaded.  In fact,
he could not even tell how the cargo had been loaded.  His testimony is no
evidence of negligence.

Dewbre, however, possesses sufficient knowledge,
skill, and experience to qualify as an expert in this case.  See Tex. R.
Evid. 702. 
He has supervised the loading of commercial vehicles and is apparently familiar
with the standards for doing so.  He observed the load on the day of the
accident.  Based on his experience, he believed that the pallets were stacked
too high and were not supported by void fillers.  He testified that the purpose
of void fillers is to prevent the load from shifting.  He felt the load hit the
side of the truck and then felt the truck begin to roll over.  He clearly explained
the basis of his conclusion that Anheuser-Busch negligently loaded the cargo:
stacking the pallets too high and failing to use void fillers.  See Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)
(“An expert’s simple ipse dixit is insufficient to
establish a matter; rather, the expert must explain the basis of his statements
to link his conclusions to the facts.”).  He also explained what he would have
done differently.  His testimony is sufficiently reliable because there does not
appear to be any significant “analytical gap” between his opinions and the
bases for those opinions.  See Kerr-McGee, 133 S.W.3d at 254.

We, therefore, conclude that Dewbre’s testimony
was sufficient to raise a genuine issue of material fact as to whether the
accident was proximately caused by Anheuser-Busch’s negligence in loading the
trailer.  The trial court improperly granted Anheuser-Busch’s no-evidence
motion for summary judgment.  We sustain Dewbre’s sole issue.  The trial
court’s judgment is reversed and this cause is remanded for further proceedings
consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurs only in the
judgment.  A separate opinion will not issue.)

Reversed and
remanded 

Opinion
delivered and filed November 26, 2008

[CV06]









[1]               Dewbre is not an employee
of Anheuser-Busch, Inc.





[2]               To
establish negligence,
a party must establish a duty,
a breach of
that duty, and
damages proximately caused by the breach.  Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006).