

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00427-CV

TRAVIS WINEGEART, APPELLANT

V.

JEFFREY D. CONE, M.D., APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 98,496-E, Honorable Douglas Woodburn, Presiding

June 1, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Travis Winegeart, appeals the trial court's granting of a no-evidence motion for summary judgment in favor of appellee, Jeffrey D. Cone, M.D., in this medical malpractice lawsuit. For the reasons hereinafter set forth, we will affirm the trial court's summary judgment.

Factual and Procedural Background

The basic fact pattern is not contested. A brief recitation of the operative facts will suffice for the purposes of this opinion.

Winegeart fell from a horse on January 6, 2008. As a result of the fall from the horse, Winegeart was transported to Northwest Texas Hospital. After a CT scan of his spine revealed a rather severe spinal stenosis, Dr. Cone, a neurosurgeon, was consulted. Based upon his examination of Winegeart, Cone recommended a decompressive thoracic laminectomy.

Cone performed the decompressive thoracic laminectomy at Panhandle Plains Hospital on January 23, 2008. The laminectomy was performed on the thoracic vertebra at the T10 and T11 level. According to Cone's surgical reports, he observed that the dural membrane covering the spinal cord adhered to the bony part of the vertebra, and that there was epidural scarring, bone spurring, and severe spinal stenosis. All of which, according to Cone, are consistent with a chronic stenosis condition of long-standing duration.

Following the surgery, there were periods of some improvement followed by periods of regression in Winegeart's ability to move his legs and experience feeling in his legs. Early on, while Winegeart was still in the recovery room, Cone ordered an assessment of Winegeart and administration of steroids. The following few days were best described by all of the witnesses as periods of "waxing and waning" in connection with Winegeart's overall improvement. During this period of time, Winegeart and his wife were concerned because he continued to have weakness and numbness in his

legs, and periods of time when he could neither feel nor move his legs. On January 25, 2008, Cone transferred Winegeart to Baptist Saint Anthony's Health System (BSA) for rehabilitation.

After Winegeart's transfer to BSA, his condition seemed to worsen. As a result, an MRI scan was performed on January 31, followed by a CT scan on February 1. Cone elected to perform exploratory surgery on Winegeart on February 2. The surgery revealed an amount of blood on the spinal cord. According to Cone, there was no spinal cord compression found. Winegeart's expert disagreed and opined that what was found was a significant hematoma with resultant compression of the spinal cord. These were the causes of Winegeart's partial paralysis and lack of feeling in his legs, according to the expert.

Winegeart filed suit and, after a period of discovery, Cone filed a no-evidence motion for summary judgment that contends that there is (1) no evidence that any act or omission of Cone proximately caused harm or injury to Winegeart, (2) no evidence that Cone's alleged negligence was the cause-in-fact of Winegeart's damages, and (3) no evidence that Winegeart's injury was a foreseeable consequence of Cone's negligence. After a response by Winegeart, the trial court entered an order granting Cone's no-evidence motion for summary judgment without specifying which ground the trial court was relying upon.

Winegeart has appealed, contending that he has presented sufficient evidence regarding the elements of a medical malpractice case and, therefore, the trial court erred in granting the no-evidence motion for summary judgment. Accordingly, we are

asked to reverse the trial court's grant of the no-evidence motion for summary judgment. We will affirm.

## Standard of Review

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581–82 (Tex. 2004). We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Upon the filing of the no-evidence motion, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc.*, 206 S.W.3d at 582. We review the evidence presented in the light most favorable to the nonmoving party. *Id.* In so doing, we credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Accordingly, we will sustain a no-evidence point when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

## Applicable Law

In a medical malpractice case, the complainant must prove: (1) the doctor had a duty to act according to a certain standard of care, (2) the doctor breached that

4

standard of care, and (3) the breach proximately caused the injuries complained of. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). Proximate cause is further divided into two components: (1) cause-in-fact, and (2) foreseeability; and, they must be proved by a reasonable degree of probability. *See Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 860 (Tex. 2009). Further, cause-in-fact requires proof that the defendant's negligence was a substantial factor in bringing about plaintiff's injuries and, without the negligence, the injury would not have occurred. *Id.*

Analysis

Cone contends that Winegeart's expert failed to provide the necessary evidence of causation. According to Cone, this is so because the expert failed to provide any explanation why the causation theory he put forth was superior to other non-negligent causes of Winegeart's injuries. Second, Cone contends that the expert could not quantify how much better Winegeart's condition would have been had the second surgery been performed earlier. Finally, Cone contends that Winegeart's expert's opinions were no evidence because they were simply conclusions without any foundation. We will address Cone's first contention regarding causation, using the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See King Ranch, Inc.*, 118 S.W.3d at 750–51.

Cone's contention regarding Winegeart's expert's opinion on causation is centered around the deposition testimony of that expert. During his deposition, Dr. Maxwell Boakye, Winegeart's expert, testified that Winegeart suffered postoperative

5

compressive fluid collection, which he described as a hematoma and which ultimately injured Wiengeart's spinal cord. Ultimately, Boakye opined that earlier surgery by Cone to relieve this pressure would have resulted in a better outcome.

However, during the same deposition, Boakye testified that the preoperative condition of Winegeart's spinal cord due to severe stenosis could have damaged the spinal cord before Cone ever attempted the surgery. Specifically, Boakye agreed that the preoperative CT scan suggested evidence of change in the spinal cord referred to as myelomalacia. When asked if the kind of severe compression of the spinal cord over a period of time could cause an injury to the spinal cord just from that chronic process, Boakye answered, "Yes."

Further, Boakye's deposition testimony reveals that Winegeart could have suffered spinal cord injury when he fell from the horse. Boakye agreed that Winegeart's records indicated that he suffered some temporary paralysis immediately after the fall. Additionally, Boakye agreed that such a finding would suggest a spinal cord injury and that, with Winegeart's history of pre-existing spinal stenosis and bone spurs, he would be at greater risk for such an injury.

Finally, Boakye agreed that there could be other non-negligent surgical complications that could have caused the spinal cord injuries suffered by Winegeart. His testimony identified two other possibilities. These were identified as a surgeon placing too much pressure on the spinal cord absent any negligence and decreased blood supply to the spinal cord associated with swelling from surgical trauma.

In a factual situation such as this, it is incumbent on the expert to explain why the inference of negligence he has drawn is medically preferred to the competing inferences that are equally consistent with the facts as presented. *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). Without such an explanation, we are left with just the expert's opinion. In such a case, when we are not provided with the required explanation about why his inference of negligence is superior to other inferences, we have nothing more than the expert's *ipse dixit. See id.* at 539. This type of opinion is no evidence of causation. *See id.*

Having determined that Boakye's testimony is not sufficient as to the question of causation, we find that the trial court did not err in granting the no-evidence motion for summary judgment. Winegeart's issue is overruled.

## Conclusion

Having overruled Winegeart's issue, we affirm the trial court's granting of the summary judgment.

Mackey K. Hancock
Justice