In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-21-00067-CV
_____

### JUSTIN BOTTS, Appellant

### V.

### FARWAH NAQVI, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 19-08-10813-CV

## MEMORANDUM OPINION

Justin Botts appeals and argues the trial court erred in granting the defendant's no-evidence motion for summary judgment and in denying his motion requesting a continuance on the motion. On appeal, Botts argues the trial court erred in rendering a take-nothing judgment on his claims because a medical record, which he attached to his summary-judgment response, "provided more than a scintilla of

evidence" to prove that his injuries had been proximately caused by the defendant's negligence. Alternatively, Botts argues that because the discovery of the opinions of the expert witnesses expected to testify about whether his injuries were caused by the defendant's negligence was incomplete when the trial court granted the defendant's no-evidence motion, the trial court committed error by denying his motion to continue the hearing.

Concluding no error occurred, we will affirm.

Background

While driving a vehicle in a private parking lot in Montgomery County in March 2018, Farwah Naqvi turned in front of Justin Botts and their vehicles collided. Over a year later, in August 2019, Botts sued Farwah and Shahzeb Naqvi, the owner of the vehicle she was driving, on theories of negligence and negligent entrustment. In Botts's Original Petition, his live pleading for the purposes of this appeal, Botts alleged the collision caused him "serious physical and neurological injuries."[1]

---

[1]Botts's petition doesn't include a claim for any of the damages, if any, the collision may have caused to his vehicle. Also, on November 12, 2019, Botts filed a notice to nonsuit Shahzeb Naqvi. The trial court's clerk or the court stamped the nonsuit "GRANTED," and under the stamp, the

2

In September 2019 and on its own initiative, the trial court signed the first of what ultimately proved to be a series of three Docket Control Orders. The initial Docket Control Order established discovery and pleadings deadlines, expert-witness identification and designation deadlines, and placed the case on the trial court's two-week-rolling docket beginning July 6, 2020.[2] In bold print, the initial and each subsequent Docket Control Order contains language stating: **"Experts not listed in compliance with this paragraph will not be permitted to testify absent a showing of an exception under Rule 193.6."**[3] The Clerk's Record doesn't show the parties objected to the deadlines established by the trial court's Docket Control Orders. And when the deadline by which Botts was required to name his experts in the first of the Docket Control Orders expired, Botts had not designated any experts.

---

trial court signed the notice to indicate the trial court's approval of the nonsuit as to Shahzeb.

[2]*See* Tex. R. Civ. P. 190.4(a) (authorizing trial courts "on their own initiative to order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit").

[3]The first sentence of the paragraph required the parties to list the expert's name, address, telephone number the subject of the expert's testimony, and the opinions that would be proffered by each expert.

3

In May 2020, Botts and Farwah filed an agreed motion, asking the trial court to continue the case, representing to the court that they had "not yet completed written discovery, depositions, or had ample time to attempt to resolve their dispute via mediation." The trial court granted the motion, signed an Amended Docket Control Order (the second in the series), and placed the case on its trial docket for the two-week period beginning November 2, 2020. The second Docket Control Order gave the parties new and later deadlines by which they were to identify and designate their expert witnesses. Yet once again, Botts didn't designate any expert witness by the expert-witness deadline in the second Docket Control Order.

So in October 2020, the parties asked the trial court to continue the November 2020 trial setting, representing in a motion for continuance they needed more time to "conduct depositions of the Parties' respective experts, explore the possibility of settlement, and if settlement is unsuccessful, to complete discovery and prepare for trial." The trial court granted the motion, signing the last in the series of the three Docket Control Orders it issued in Botts's case. Among other things, in its Docket Control Order of October 2020, the trial court placed the case on its two-

4

week-rolling docket beginning April 5, 2021. The third Docket Control Order also gave the parties new deadlines to identify and designate their expert witnesses, making November 6, 2020, the expert-witness deadline that applied to Botts.

On December 3, 2020, Farwah filed a no-evidence motion for summary judgment. When Farwah moved for summary judgment, the case had been on file for approximately sixteen months. Additionally, over that sixteen-month period before Farwah filed the motion, the trial court had given the parties two continuances in a case where Botts had failed to name his expert witnesses by the deadlines the trial court established in the three Docket Control Orders it had issued in the suit.

On December 16, 2020, Botts filed a Designation of Expert Witnesses, for the first time designating experts. But he didn't designate any doctors by name. Instead, he listed thirty healthcare entities as non-retained experts. In his Designation of Experts, Botts represented he received medical treatment from these thirty healthcare providers, and in his Designation, he stated these providers "may be asked to provide their opinion(s) and mental impression(s)" about the "causation of [his] injuries, and/or the extent of [his] alleged damages." The Designation

Botts filed, however, didn't include the names or addresses of any of Botts's physicians who treated Botts when he was seen by the facilities listed in Botts's designation, nor did he reveal the substance of the opinions of either the facilities or the healthcare providers who worked there.

As to the substance of Farwah's no-evidence motion for summary judgment, she alleged that Botts couldn't prove the physical and neurological injuries he allegedly suffered "were proximately caused by the auto collision in question." Farwah's no-evidence motion alleges that Botts has no expert testimony to tie his alleged injuries—which according to Botts's petition range from seizures and headaches to cervical and lumbar radiculopathy—to the collision between their vehicles that occurred in March 2018.

On December 29, 2020, Botts responded to Farwah's no-evidence motion. In his response, Botts stated that he "does not dispute that expert testimony will be required to prove that [his] injuries were proximately caused by the motor vehicle collision with the Defendant." Botts attached two exhibits to his motion to support his response: (1) a copy of the Designation of Expert Witnesses, which he filed in the case just two

weeks before; and (2) medical records obtained by subpoena from United Neurology. The records of United Neurology consist of a report from Dr. Diamchid Lotfi, and it shows he saw Botts once at United Neurology's offices in February 2019. Dr. Lotfi's two-page report shows that Dr. Lotfi took Botts's history and examined him. According to the report, Dr. Lotfi evaluated Botts "for post traumatic brain concussion, to rule out cervical spine and lumbar spine radiculopathy, seizure disorder." The neurological evaluation Dr. Lotfi performed on Botts was essentially normal.

Dr. Lotfi's report neither includes a diagnosis, nor does it contain Dr. Lotfi's opinion about whether Dr. Lotfi thought the symptoms Botts reported to him in February 2019 were related in reasonable medical probability to the March 2018 collision. The report concludes with Dr. Lotfi's recommendations that Botts undergo additional tests, take ibuprofen for neck and back pain, and apply anti-inflammatory cream to his neck and back for pain.

In granting Farwah's no-evidence motion, the trial court concluded Botts failed to meet his burden to prove that an issue of material fact existed on Botts's claim the March 2018 collision caused the injuries

Botts was claiming to have suffered based on the allegations in the petition he filed in the suit. In its order denying the motion, the trial court also denied Botts's request to continue the case. As previously mentioned, when the trial court denied the request to continue the hearing on the motion for summary judgment, the trial court had previously granted two continuances, both on representations by the parties that they needed more time to depose experts. What is more, Botts had failed to timely designate any expert witnesses under the last Docket Control Order that applied to the discovery of experts in his case.

After the trial court granted Farwah's no-evidence motion, Botts filed a motion for new trial. The trial court denied the motion and Botts appealed.

Standard of Review

We apply a de novo standard to review rulings granting motions for summary judgment.[4] In no-evidence motions, the motion must allege that no evidence supports one or more of the essential elements of a party's claim.[5] Thus, the motion must state "the elements as to which

---

[4]*Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).
[5]Tex. R. Civ. P. 166a(i).

there is no evidence."[6] When the motion contains the required no-evidence allegations, the burden of proof shifts to the defendant to produce evidence "raising an issue of material fact as to the elements specified in the motion."[7] When deciding the no-evidence motion, the trial court must grant the motion if

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.[8]

We review the evidence Botts attached to his response to Farwah's no-evidence motion in the light favoring Botts's claim.[9] The non-movant raises a genuine issue of material fact by producing "more than a scintilla of evidence" to establish a material issue or issues of fact exist on the elements of his claim that have been challenged based on the allegations in the no-evidence motion.[10] More than a scintilla of evidence exists when the evidence is such that reasonable and fair-minded people can differ in

---

[6]*Id.*

[7]*Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2003).

[8]*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (cleaned up).

[9]*See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[10]*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

their conclusions.[11] But when "the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."[12]

## Analysis

In his first issue, Botts argues his medical records provide "more than a scintilla of evidence" to prove his injuries were caused by Farwah's negligence in causing the collision between their vehicles in March 2018. Botts points to Dr. Lotfi's report to support his argument, claiming that in the report Dr. Lotfi drew "a causal connection between Botts's seizure disorder" and "the collision by noting specific facts and [by making a] differential diagnosis[,]" which "specifically referenc[es] the collision[.]"

As previously mentioned, when in the trial court, Botts specifically acknowledged that he was required to produce "expert testimony" to prove his "injuries were proximately caused by the motor vehicle collision with the Defendant." As described by Plaintiff's Original Petition, Botts alleged the collision caused "Plaintiff to suffer serious physical and

[11]*Id.* at 601.
[12]*Id.* (cleaned up).

10

neurological injuries." The Original Petition contains no further details describing Botts's injuries.

Botts presumes that Dr. Lotfi's report contains a diagnosis of Botts's injury and that the report ties the injury to the collision of March 2018. We disagree. The report doesn't contain a diagnosis based on reasonable medical probability; instead, it merely includes a presumptive diagnosis based on what Botts reported to Dr. Lotfi about his symptoms, which is the reason Dr. Lotfi ordered various tests so that the symptoms and what was causing them could be identified and confirmed or ruled out. The report does not show what Dr. Lotfi's opinion might have been in February 2019 on the question of whether Dr. Lotfi thought Botts's symptoms in reasonable medical probability either were or were not related to the March 2018 collision based on the information Dr. Lotfi included in his report.

To be clear, the information Dr. Lotfi's report contains consists of Botts's name, date of birth, age, date of injury, and the date Dr. Lotfi saw Botts in his office. In addition, the report contains nine sections: (1) History of Present Illness / Chief Complaint; (2) Drug History; (3) Past Medical History; (4) Allergies; (5) Social History; (6) Family History; (7)

11

Neurological Evaluation; (8) Impression; and (9) Plan. Under the section labeled Neurological Evaluation, most of Dr. Lotfi's findings are reported as normal, but two signs are reported as abnormal. As to the abnormal findings, the report states: "Romberg sign is positive. Tandem gait is abnormal." The report, however, doesn't contain an opinion stating that these two abnormalities are related (or unrelated) to the collision of March 2018. Stated another way, the report is both silent as to whether Dr. Lotfi has an opinion about whether the March 18 collision had any role in causing the two abnormal results he found in examining Botts, and silent about what could have caused the two abnormalities he found during the February 2019 exam.

Under the section of the report labeled Plan, Dr. Lotfi recommended that Botts undergo an array of cervical and lumbar MRI's, an MRI of the brain, EEG's, a carotid Doppler, EMGs, and blood tests, tests that included testing Botts's blood for the presence of a specific drug. Under the section of the report labeled Impression, Dr. Lotfi wrote: "Evaluation for post traumatic brain concussion, to rule out cervical spine and lumbar spine radiculopathy, seizure disorder."

Boiled down, when viewed in the light most favorable to Botts as the non-movant, Dr. Lotfi's report never ties the collision of March 2018 to the symptoms Botts reported to Dr. Lotfi nearly a year later when Dr. Lotfi saw Botts in his office in February 2019; instead, the report shows that Dr. Lotfi ordered a number of tests seeking answers to what might have been causing Botts's symptoms, questions that might or might not have been favorable to the claim Botts was making in his lawsuit.

When a party fails to produce evidence raising a fact issue on the elements of the claim challenged by a no-evidence motion, the Rules of Civil Procedure require the trial court to "grant the motion[.]"[13] Because Dr. Lotfi's report doesn't create a fact issue on whether the March 2018 collision caused the serious physical and neurological injuries that Botts alleged he suffered, the trial court did not err in granting Farwah's no-evidence motion. Botts's first issue is overruled.

In his second issue, Botts argues the trial court abused its discretion by denying his motion to continue the hearing on Farwah's motion for summary judgment. In his appeal, Botts argues the trial court should have granted the motion because he did not have an adequate

---

[13]Tex. R. Civ. P. 166(a)(i).

13

opportunity to conduct expert-witness discovery before the trial court granted Farwah's motion. We review a trial court's determination of whether the court allowed adequate time for discovery before deciding a motion for summary judgment for abuse of discretion, and we apply that standard based on the facts particular to each case.[14]

First, we note the case had been on the trial court's docket for seventeen months when the trial court ruled on Farwah's no-evidence motion. Thus, the eighteen-month guideline trial courts are directed to follow in disposing of cases on their dockets was approaching when the trial court ruled on the motion. Yet the only evidence Botts produced in response to Farwah's no-evidence motion was a single report from a doctor, a doctor who didn't diagnose the cause of the symptoms Botts reported and who instead ordered an array of tests so the doctor could determine whether, with the benefit of the tests, a cause for the symptoms Botts was complaining about could be defined. Yet when Botts filed his response to Farwah's no-evidence motion in December 2020, nearly two years after Dr. Lotfi had ordered the tests, none of the testing

---

[14]*Ratcliff v. LHR, Inc.*, No. 09-07-00566-CV, 2009 Tex. App. LEXIS 3659, at *4-5 (Tex. App.—Beaumont May 28, 2009, pet. denied).

14

based on what Botts provided the trial court appears to have been done. And without the tests, there is nothing in the record that shows that Dr. Lotfi had completed the investigation he thought he needed to diagnose whether the March 2018 collision caused the symptoms Botts was complaining about when he appeared in Dr. Lotfi's office in February 2019. On top of the problems with Dr. Lotfi's report, Botts failed to designate Dr. Lotfi as an expert witness in response to any of the docket control orders the trial court signed in the case.

On appeal, Botts argues for the first time he also wanted to take the deposition of three other experts in the case named by the defendants, experts he doesn't name in his brief. But when Botts was in the trial court, the sole complaint he raised in his motion for continuance was that he needed more time so that he could obtain the deposition of his expert, Dr. Lotfi. The record does not support Botts's claim that he asked the trial court to continue the hearing so that he could depose expert witnesses other than Dr. Lotfi. Because that part of Botts's argument

does not comport with the argument he presented in his motion for continuance, it was not preserved for our review in the appeal.[15]

Last, we turn to the claim Botts preserved, that he didn't have adequate time to discover the testimony of Dr. Lotfi. Botts's argument implies the only way he could defeat Farwah's no-evidence motion was by taking Dr. Lotfi's deposition. We disagree.

Under the rule that applies to summary judgment evidence, Rule 166a(c), a party opposing a motion for summary judgment may file an affidavit supporting its response.[16] So Botts didn't need Dr. Lotfi's deposition to support his response. Instead, he could have (if Dr. Lotfi would have provided him with the opinion that he needed) had Dr. Lotfi sign an affidavit stating that in his opinion, Farwah had been injured in the automobile collision of March 2018 and that, Botts's serious

---

[15]Tex. R. App. P. 33.1(a)(1) (requiring parties to state the grounds for the rulings they seek from the trial court with sufficient specificity to make the trial court aware of their complaints, unless the grounds are apparent from the context); *see Mendez v. Delgado*, No. 04-18-00454-CV, 2019 Tex. App. LEXIS 6053, at *6 (Tex. App.—San Antonio July 17, 2019, no pet.) ("Because the complaint Mendez presents on appeal differs from the complaint she made in her motion for continuance, she has not preserved this issue for review on appeal.").

[16]Tex. R. Civ. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing, may file and serve opposing affidavits or other written response.").

neurological injuries were in the doctor's opinion in reasonable medical probability related to the March 2018 collision. Stated another way, Botts's claim that Farwah's counsel was unavailable for depositions of experts didn't prevent Botts from obtaining the evidence he needed to defeat Farwah's motion for summary judgment. Since Botts had the burden on his motion for continuance to establish his motion was supported by sufficient cause, we cannot say the trial court abused its discretion by denying the motion when the record shows the trial court had continued the case twice to allow the parties to obtain depositions from their experts, but after granting the continuances, no depositions from any experts were obtained.[17]

On this record we hold the trial court didn't abuse its discretion in denying Botts's motion for continuance because: (1) this case involves a collision between two vehicles, where neither driver was hospitalized following the collision; (2) Botts would have needed only an opinion from one doctor to support his theory that his serious physical and neurological injuries were caused by the collision in March 2018 to have controverted

---

[17]Tex. R. Civ. P. 251 (stating "nor shall any continuance be granted except for sufficient cause").

the issue raised in Farwah's motion; (3) Botts had sufficient time to obtain evidence and respond to Farwah's motion to support his claim given the length of time the case was on the trial court's docket and the time he had to respond to Farwah's motion and the narrow issue she raised in her motion for summary judgment challenging causation; (4) the history of the case while it was pending on the trial court's docket; and (5) the fact that when Farwah filed her no-evidence motion, Botts still didn't have any evidence supporting his claim of the collision caused his injuries even though the case had been on file for more than a year.

## Conclusion

Having overruled Botts's issues, the trial court's judgment is AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 14, 2022
Opinion Delivered April 13, 2023

Before Golemon, C.J., Horton and Wright, JJ.

18