**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00102-CV

———————————

**TARA M. WILLIAMS, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY B. "TONY" WILLIAMS, Appellant**

**V.**

**BAD-DAB, INC. D/B/A THE SPOT LOUNGE AND BAR AND BAR ONE SPORTS & JASS BAR, Appellees**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-59885**

---

## MEMORANDUM OPINION

Appellant Tara M. Williams, individually and as personal representative of

the estate of her husband, Anthony B. "Tony" Williams, brought a wrongful death

and survivor's action alleging that appellee, Bad-Dab, Inc. d/b/a The Spot Lounge and Bar, violated the Dram Shop Act and caused Tony's death. *See* TEX. ALCO. BEV. CODE ANN. §§ 2.01–.03 (West 2007). Tara appeals the trial court's final summary judgment in favor of The Spot based on a statutory affirmative defense. In addition, Tara contends that the trial court erroneously granted a final judgment as to a second defendant, Bar One Sports & Jass Bar. We affirm the judgment as to The Spot, and we reverse the judgment as to Bar One and remand for further proceedings.

## Background

Tony Williams drank alcoholic beverages at The Spot from approximately 9:00 p.m. on November 14, 2008 until 2:00 a.m. the following morning. Williams then left the bar, drove his motorcycle into a tree, and suffered fatal injuries. His widow, Tara, sued The Spot under the Dram Shop Act. The Spot pleaded a statutory affirmative defense applicable when employees have been required to attend certain training programs and the employer has not encouraged violations of the law with respect to over-service of bar patrons. *See* TEX. ALCO. BEV. CODE ANN. § 106.14 (West Supp. 2011). Almost a year after Williams filed suit, The Spot filed a traditional and no-evidence motion for summary judgment. As summary-judgment evidence, The Spot attached an affidavit from its owner, Aaron Gray, who testified that "all employees of The Spot Lounge & Bar are required to

2

complete seller-server training programs approved by the Texas Alcoholic Beverage Commission." He also testified that the three employees who were working on the night of the incident were Tangela Bond, Ronald Matthews, and Brooke Sweeney. The Spot also attached as summary-judgment evidence an affidavit from Ashleigh Jons, the Coordinator for Seller-Server Certification for the Texas Alcoholic Beverage Commission. Jons averred that she examined the records of Seller-Server Certification for the Texas Alcoholic Beverage Commission and that Bond, Matthews, and Sweeney had completed seller-server training, had been certified, and their certifications were current on November 14, 2008. The Spot directed its no-evidence motion for summary judgment to the third element of its affirmative defense, asserting that there was no evidence that it directly or indirectly encouraged its employees to violate the law regarding serving alcoholic beverages to a person who is obviously intoxicated. *See id.* § 106.14(a)(3).

Tara responded, objecting to The Spot's summary-judgment evidence and offering her own evidence to prove that The Spot encouraged its employees to violate the Dram Shop Act. Tara objected that some statements in the motion for summary judgment were not supported by affidavit testimony, but she did not specifically identify any such unsupported statements. She also objected to Gray's affidavit on the basis that it was conclusory and not readily controvertible. She

3

objected to Jons's affidavit on the basis that it did not independently establish the safe harbor defense.

As summary-judgment evidence, Tara attached the affidavit of Ernest E. Stewart, Jr., who saw Tony at The Spot on the night of his death, and who averred:

> I arrived at The Spot Lounge . . . on Friday, November 14, 2008, around 9:30 p.m., and saw Anthony B. Williams ("Tony"). Tony was obviously intoxicated. I saw the waitresses bring alcoholic beverages to him, mostly beer and cocktails, during the entire time I was at the lounge. The drinks were being brought to Tony without him ordering most of them. Tony was talking very loud and swaying from side to side. His eyes were glassy, red, and half open. I observed the behavior of the persons serving him and it was obvious to me that they knew he was intoxicated. I also observed the people working at the lounge that night and it was obvious that they were trying to solicit and serve as many alcoholic beverages that they could to [everyone] who was at the lounge, even others who, like Tony were obviously intoxicated and should not be served any more alcohol. I was mingling with other patrons in The Spot Lounge and saw Tony moving around as well. At about closing time, I saw Tony was very intoxicated as he was stumbling around trying to walk out of the lounge to get on his motorcycle. No one from the staff or management of The Spot Lounge attempted to deter him from getting on his motorcycle or even suggested that he was not in any condition to drive. . . .

Tara also submitted an affidavit from Mark Willingham, who provides "expert witness testimony concerning the Lawful, Safe, and Responsible sale of beverage alcohol." Willingham stated that Tara had retained him to render opinions "concerning [The Spot] violating the Dram Shop Act in connection with the death of her husband . . . ." He said that he had reviewed Tony's autopsy report, the

4

affidavits of Stewart, Gray, and Jons, and various motions and discovery responses. Based on the information in Stewart's affidavit, Willingham stated:

> Mr. Stewart further states that defendant's employees served alcoholic beverages to [Tony] without [his] ordering the additional alcoholic beverages. Serving alcoholic beverages without patron request is an active promotion of alcoholic beverages reasonably intended to result in the excessive sale of alcoholic beverages and reasonably calculated to maximize alcohol sales to patrons regardless of the patron's intoxication level; their desire for additional alcoholic beverages; or their ability to moderate further alcoholic beverage consumption due to their intoxicated state. It appears that Bad-Dab, Inc. employees engaged in active promotion of alcoholic beverages to [Tony]. This promotion would only occur if the employer told the employees, directly or indirectly, to push the sale of alcoholic beverages to maximize income, or if the employer failed to have any meaningful compliance procedures in place through which its employees could identify and refuse to sell and serve alcohol to obviously intoxicated patrons. There appears to be no meaningful procedures implemented by the employer through its employees to restrict sales of alcohol to obviously intoxicated patrons. That, coupled with the atmosphere of maximizing sales, constitutes either direct or indirect encouragement of the employer to its employees to violate the Dram Shop Act by continuing to sell and serve alcohol to obviously intoxicated patrons, such as [Tony], which resulted in his death.

Willingham also averred that based on the autopsy report's statement that Tony had a blood alcohol content of 0.24, it "was clearly obvious to the employees that [Tony] was intoxicated." Although Willingham did not see Tony on the night in question, he stated in his affidavit that Tony "would have been slurring his speech; would have exhibited red, glassy, and bloodshot eyes; would have been stumbling or having difficulty walking; and would have had difficulty talking." Thus,

5

Willingham concluded that The Spot directly or indirectly encouraged its employees to sell and serve alcohol to Tony when he was obviously intoxicated and in violation of the Dram Shop Act.

After The Spot moved for summary judgment, but before the trial court ruled on the motion, Williams amended her petition to add another defendant, Bar One Sports & Jass Bar. Williams alleged that Bar One owned the premises or was a joint venture with The Spot, and therefore it was also liable under the Dram Shop Act. The trial court granted a take-nothing judgment in favor of The Spot. In its final summary judgment, the court noted, "This judgment is final, disposes of all claims and parties, and is appealable." Approximately two months later, an answer was filed on behalf of Bar One. The trial court subsequently denied Williams's motions for new trial and for reconsideration, and Williams appealed.

## I.    Analysis

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for summary judgment must conclusively negate at least one

6

essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Under the "no-evidence summary judgment" rule, the movant may move for summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* The reviewing court must grant the motion unless the nonmovant produces summary-judgment evidence raising a genuine issue of material fact. *Id.*; *Mack Trucks*, 206 S.W.3d at 581. A genuine issue of material fact exists if the nonmovant produces evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller*, 168 S.W.3d at 816).

## II. The Spot

The Texas Dram Shop Act imposes civil liability on providers of alcoholic beverages for damages resulting from the sale or service of alcohol to a person

who is obviously drunk.  *See* TEX. ALCO. BEV. CODE. ANN. §§ 2.01–.03 (West 2007); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (explaining history of Texas Dram Shop Act).  The statute also contains a "safe harbor provision" eliminating liability under certain circumstances.  *See* TEX. ALCO. BEV. CODE ANN. § 106.14(a) (West Supp. 2011); *see also 20801, Inc. v. Parker*, 249 S.W.3d 392, 395–96 (Tex. 2008).  Section 106.14, the safe harbor provision, states:

> (a)     For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if:
>
> > (1) the employer requires its employees to attend a commission-approved seller training program;
> >
> > (2) the employee has actually attended such a training program; and
> >
> > (3) the employer has not directly or indirectly encouraged the employee to violate such law.

TEX. ALCO. BEV. CODE ANN. § 106.14(a).  The Supreme Court of Texas construed this provision in *20801, Inc. v. Parker*, 249 S.W.3d 392, 395 (Tex. 2008), particularly in regard to the burdens of proof as to each element.  The first two elements of the defense were characterized as a "'carrot' that gives providers an incentive to ensure that their employees complete the training the Legislature has

8

determined to be beneficial." *20801, Inc.*, 249 S.W.3d at 395. The court held that providers of alcoholic beverages have the burden of proof as to the first two elements. *Id.*

The court also observed that the third prong of the statutory standard limits the protection that the Legislature afforded, reflecting "the Legislature's concern that an employer might exploit this protection from liability by encouraging its employees to violate the law, increasing its profits while defeating the statute's purpose." *Id.* at 396. In determining which party should bear the burden of proof on the third prong, the court considered "'the comparative likelihood that a certain situation may occur in a reasonable percentage of cases . . . .'" *Id.* at 397 (quoting *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 675 (Tex. 1990)). The court observed:

> Here, while there may be encouragement in some form in a reasonable percentage of cases, the variety of acts and omissions that could constitute encouragement is potentially limitless, and the likelihood of any particular form of encouragement being present in a given case is extremely small. Thus, requiring every provider to prove that it did not in any way encourage its employees to over-serve "would be an inefficient and uneconomical use of judicial resources." Further, as a practical matter, "proving a negative is always difficult and frequently impossible." It would indeed be extremely difficult for a provider to establish that it in no way directly or indirectly encouraged its employee to violate the law: while a provider could disclaim consciously encouraging its employees to violate the law, in some cases . . . a provider may do so inadvertently. Requiring such evidence could effectively deprive providers of a protection the Legislature clearly intended.

9

*20801, Inc.*, 249 S.W.3d at 397 (internal citations omitted). Thus, the court held that the plaintiff has the burden of proof as to whether the employer has directly or indirectly encouraged its employees to violate the law. *Id.* In meeting its burden of proof, a plaintiff need only show that the employer acted negligently. *Id.* A plaintiff's evidence of encouragement might include, among other things, evidence that the provider ordered or rewarded over-service, modeled inappropriate behavior by himself serving alcohol to obviously intoxicated people, failed to punish employees for over-service, or set "an excessively high minimum sales quota without regard to the number of patrons." *Id.* at 398. However, an employer is not required to have a formal policy against over-service, and when providers do have such policies in place, they are not required to show that their policies were enforced on the occasion giving rise to the lawsuit. *Id.* at 397–400.

In light of the shifting burden of proof on the elements of the safe harbor provision, a party wishing to assert this affirmative defense by summary judgment should file a traditional motion for summary judgment as to the first two elements and a no-evidence motion for summary judgment as to the third evidence, properly shifting the burden to the plaintiff to produce evidence of encouragement. *See id.* at 399–400.

The Spot filed a motion for summary judgment asserting that it conclusively proved the first two elements of the safe harbor provision under the standard for a

traditional motion for summary judgment, *see* TEX. R. CIV. P. 166a(c), and asserting that there was no evidence of the third element of the safe harbor provision, *see* TEX. R. CIV. P. 166a(i). In his affidavit, Aaron Gray testified that he is the owner of The Spot and that he has personal knowledge that all employees "are required to complete seller-server training programs approved by the Texas Alcoholic Beverage Commission." He also identified by name the employees who were working on November 14, 2008. Ashleigh Jons averred that she had examined the records of seller-server certification and that the employees who worked at The Spot on November 14, 2008 had completed seller-serving training courses and had certifications that were current and not expired on that date. These affidavits established that The Spot required its employees to attend a Commission-approved seller training program and that the employees who worked on November 14, 2008 had actually attended such a training program.

On appeal, however, Tara argues that the trial court should not have considered The Spot's summary-judgment evidence. Texas Rule of Civil Procedure 166a(f) requires that affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). An affiant's

11

belief about the facts is legally insufficient. *Ryland Group, Inc.*, 924 S.W.2d at 122; *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Likewise, conclusory affidavits do not raise fact issues because "[t]hey are not credible, nor susceptible to being readily controverted." *Ryland Grp.*, 924 S.W.2d at 122; *see Brownlee*, 665 S.W.2d at 112 ("Affidavits consisting only of conclusions are insufficient to raise an issue of fact."). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ).

Tara contends that Gray's affidavit is inadequate because it did not state that he had never been convicted of a felony or crime of moral turpitude and because it stated that the employees who worked on November 14, 2008 "completed" a seller-sever training program but did not state that they attended such a program. Further, Tara contends that The Spot should have attached "some document establishing the required attendance and the actual attendance" by the employees. She contends that Gray's affidavit is "hearsay, conclusory, not positive clear and direct and capable of being readily controvertible [sic] and is not clear as to how he knows the matters stated therein." Tara argues that Jons's affidavit is inadequate because it did not state which employees were working that night, if they attended a Commission-approved program, or if they served Tony alcohol. She also challenges the affidavit because it does not recite facts about Tony's intoxication

12

on November 14, 2008 or that The Spot required all employees to attend a Commission-approved training program. The trial court did not rule on Williams's objections to The Spot's summary-judgment evidence.

To preserve objections to the form of summary-judgment evidence for appeal, a party asserting the objections must obtain a ruling at or before the summary judgment hearing. *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see* TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 166a(f). "[A] trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment." *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.)). Objections to hearsay, improper authentication, or lack of foundation are defects in form, which require a ruling for appellate review. *See Petro-Hunt, L.L.C. v. Wapiti Energy, L.L.C.*, No. 01-10-01030-CV, 2012 WL 761144, at *4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. denied) (mem. op.); *Petroleum Analyzer Co. L.P. v. Franek Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *20 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.). However, an objection that statements in an affidavit are conclusory is a defect of substance, which may be raised for the first time on appeal. *See Green*

13

*v. Indus. Specialty Contractors*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Tara did not secure a ruling on her objections to The Spot's summary-judgment evidence. Thus only her objections that assert a defect of substance are preserved. *See Vice*, 318 S.W.3d at 11. The only such objection was her contention that Gray's affidavit was conclusory. Tara contends that Gray's affidavit was conclusory because he did not state the basis for his knowledge that all employees were required to attend or complete seller-server training. Williams argues that Gray should have attached "some document establishing the required attendance and the actual attendance." Gray testified that he had personal knowledge of the facts stated in his affidavit, that he was the owner of The Spot, and that all employees were required to complete seller-server training programs. This establishes his personal knowledge that the employees were required to attend seller-server training because his position as owner is the underlying fact that supports his statement. *See Rizkallah*, 952 S.W.2d at 587. Moreover, as the statute does not require a provider to have any specific written policies, The Spot was not required to attach a document establishing the attendance requirement. *See 20801, Inc.*, 249 S.W.3d at 398. We conclude that the proffered summary-judgment evidence establishes the first two elements of the safe harbor provision as a matter of law.

In response to The Spot's no-evidence motion for summary judgment on the issue of encouragement to violate the law by over-serving obviously intoxicated patrons, Tara introduced an affidavit from Ernest Stewart, who saw Tony at The Spot on November 14, 2008. Stewart testified that he arrived at The Spot at 9:30 p.m. and that Tony was obviously intoxicated. He said that Tony was "talking very loud and swaying from side to side. His eyes were glassy, red, and half open." Although this is some evidence of both Tony's intoxication and Stewart's knowledge of his intoxication, it is not evidence The Spot encouraged its employees to continue serving him. Stewart testified, "I observed the behavior of the persons serving him and it was obvious to me that they knew he was intoxicated. I also observed the people working at the lounge that night and it was obvious that they were trying to solicit and serve as many alcoholic beverages that they could to every on [sic] who was at the lounge, even others who, like Tony were obviously intoxicated and should not be served any more alcohol."

Though Stewart testified that it was obvious to him what the employees knew and how they were trying to solicit and serve alcoholic beverages to obviously intoxicated patrons, Stewart's affidavit does not provide any underlying facts to support these conclusory statements. He does not describe or identify any actions or statements made by anyone associated with The Spot that would show that or how they knew that Tony or any other patron was obviously intoxicated.

15

He does not provide any testimony that shows any factual basis to presume that The Spot encouraged its employees to violate the law. *Compare Primera Enters., Inc. v. Autrey*, 349 S.W.3d 167 (Tex. App.—El Paso 2011, no pet.) (holding that bar proved "safe harbor" defense as matter of law when evidence showed that employees were required to and did attend TABC server training, were trained to call taxi for intoxicated customer, and were subject to dismissal for serving alcohol to customer who was "intoxicated to a level that he posed danger to himself or others," and when there was no evidence that bar "knowingly ordered or rewarded over-service" or "engaged in behavior which a reasonable provider . . . should have known would constitute encouragement), *with Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 330 (Tex. App.—Eastland 2000, no pet.) (holding that testimony from server that manager told her to keep serving alcohol to obviously intoxicated people until "he made his decision on whether they needed to be served or not" raised fact question about whether the employer encouraged its employees to violate law and precluded summary judgment).

Tara also provided an affidavit from Mark Willingham, who stated that he provides "expert witness testimony concerning the Lawful, Safe, and Responsible sale of beverage alcohol." Willingham testified that he relied on Tony's autopsy report, affidavits from Stewart, Gray, and Jons, the parties' motions and responses, and The Spot's responses to discovery requests in forming his opinions.

16

Willingham particularly relied on Stewart's statement that employees served Tony alcoholic beverages without him ordering them. Willingham testified that serving alcoholic beverages to patrons who did not order them is "an active promotion of alcoholic beverages reasonably intended to result in the excessive sale of alcoholic beverages and reasonably calculated to maximize alcohol sales to patrons regardless of the patron's intoxication level; their desire for additional alcoholic beverages; or their ability to moderate further alcoholic beverage consumption due to their intoxicated state." He further testified that "[t]his promotion would only occur if the employer told the employees, directly or indirectly, to push the sale of alcoholic beverages to maximize income, or if the employer failed to have any meaningful compliance procedures in place through which its employees could identify and refuse to sell and serve alcohol to obviously intoxicated patrons." Neither Willingham nor Stewart testified to any facts that would support a conclusion that The Spot actually told its employees to push the sale the alcoholic beverages. Willingham's statement that such promotion necessarily would occur "only" if the employer so encouraged the employees is conclusory and is no evidence that The Spot encouraged its employees to violate the Dram Shop Act.

Because we conclude that there was no evidence of encouragement and that The Spot conclusively established the first two elements of the safe harbor

17

provision, we hold that the trial court did not err in granting final summary judgment in favor of The Spot.

## III. Bar One

In her final issue, Williams contends that the court erred by issuing a final judgment at a time when she had claims pending against Bar One. An order or judgment entered before a conventional trial on the merits is final for purposes of appeal if it actually disposes of every pending claim and party or if it states "with unmistakable clarity" that it finally disposes of all claims and all parties. *M. O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam). In this case the trial court's judgment was entitled "Final Summary Judgment," expressly stated that Williams, individually, and as personal representative of her late husband's estate, "take nothing by her suit," and expressly stated that it "is final, disposes of all claims and parties, and is appealable." Thus, it was a final order for the purposes of appeal. *See id.* However, because the court did not have before it any summary judgment motion from Bar One, the judgment erroneously disposed of the claims against Bar One. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final"). Thus, we sustain this issue and reverse the court's judgment as to Bar One.

## Conclusion

We affirm the trial court's judgment as to The Spot. We reverse the court's judgment as to Bar One and remand this case for further proceedings on Williams's claims against Bar One.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.