

# NUMBER 13-22-00016-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF G.M.K., A CHILD

### On appeal from the 267th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Silva

Appellant Jared appeals the trial court's order modifying the parent-child relationship.[1] By three issues, Jared argues that the trial court erred by denying his motion to modify his child support obligation to appellee Kathleen because (1) he provided sufficient evidence to show a material and substantial change in circumstances;

---

[1] We refer to the parties and child by aliases in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2), cmt.

(2) the trial court applied the incorrect standard for child support modification; and (3) the trial court did not provide him with a fair and impartial trial because it was biased. We affirm.

## I.    BACKGROUND

Jared filed a petition to modify the parent-child relationship, asking the trial court to provide him with certain independent rights of the child, Gage; begin his periods of possession from the time school releases; and reduce his child support obligation. The order that Jared sought to modify established his child support obligations at $1,146 per month as well as requiring him to maintain health insurance for Gage.[2] Kathleen answered and generally denied Jared's allegations.

The trial court entered a temporary order, reducing Jared's monthly child support obligation to $923, providing him the independent rights he requested, and modifying Jared's periods of possession to begin when Gage's school releases. After a bench trial, the trial court adopted the agreed temporary order as its final order. We summarize the relevant testimony from trial below.

Jared testified that he was no longer working for his previous employer and was "going on long-term disability," which would pay him sixty-seven percent of his previous base salary. Jared explained that he had undergone two hip surgeries in November and December of 2020 that did not heal correctly, preventing him from returning to work. Jared stated that his gross income in 2019 was about $134,000, but he did not know what his

---

[2] The order does not establish Jared's possession schedule and any order that does was not included in the record before us.

2

net resources were. Jared "guessed" that his net resources for 2019 were $92,000. Jared further estimated that his gross income for 2020 "[m]ay have cleared a hundred." When asked if he was able to work at all, Jared stated, "I have no ability to do the career path that I'm on right now." However, Jared subsequently acknowledged that he would be able to work but did not believe he would be able to earn the amount he previously earned.

On cross examination, Jared agreed that he drives from Harris County to Victoria and Goliad Counties to visit his children and that he could hypothetically earn income driving professionally, but he did not have the license or certifications to do so. Jared explained that his long-term disability insurance had a two-year limit on it. Jared stated that he possessed a home, a vehicle, and a 401(k) savings plan that held approximately $130,000.[3]

In his closing argument, Jared asked the trial court to set his child support at $651, "based off [his] current $5,070.81 a month income." The trial court denied Jared's requested modification and entered a final order setting child support at the amount agreed on by the parties in the temporary order. Jared requested findings of fact and conclusions of law, which the trial court ultimately entered. This appeal followed.

## II.     CHILD SUPPORT MODIFICATION

By his first issue, Jared argues the trial court erred by denying his request to modify child support because he presented sufficient evidence to show a material and substantial change in circumstances. By his second issue, Jared argues the trial court applied the incorrect legal standard when considering modifying child support. We consider both

---

[3] Kathleen also testified, but her testimony is not relevant to the disposition of this appeal.

issues together.

## A. Applicable Law

A trial court may order a parent to financially support the child through the child's eighteenth birthday or until high school graduation, whichever is later. TEX. FAM. CODE ANN. § 154.001(a)(1). A trial court is required to calculate the amount of child support owed based on a parent's "net resources." *Id.* § 154.062(a). Resources include:

(1)    100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);

(2)    interest, dividends, and royalty income;

(3)    self-employment income;

(4)    net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and

(5)    all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, United States Department of Veterans Affairs disability benefits other than non-service-connected disability pension benefits, as defined by 38 U.S.C. [§] 101(17), unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.

*Id.* § 154.062(b). The trial court should then deduct social security taxes, state and federal income taxes, and expenses for the cost of health insurance, dental insurance, or cash medical support for the obligor's child. *Id.* § 154.062(d)(1)–(5). The remaining amount is an obligor's net resources. *Id.* § 154.062(d). The trial court shall require parties to "(1) furnish information sufficient to accurately identify that party's net resources and ability to pay child support; and (2) produce copies of income tax returns for the past two

4

years, a financial statement, and current pay stubs." *Id.* § 154.063.

If the circumstances of the child or a person affected by a child support order have materially and substantially changed or it has been three years since the prior order and the amount of support would change by $100 or 20% per month, the trial court may modify child support. *Id.* § 156.401(a). "The party requesting the modification bears the burden to show such a change in circumstances." *In re N.H.N.*, 580 S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

**B.    Standard of Review**

We review a trial court's denial to modify child support for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily or unreasonably—without reference to guiding rules and principles. *Id.* "Under this standard, the legal and factual sufficiency of the evidence are not independent grounds of error but are merely factors in determining whether the trial court abused its discretion." *Id.* When a trial court fails to find a material and substantial change, we will find the evidence supporting its conclusion legally insufficient only if the evidence conclusively established that there has been such a change. *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam)). "When considering the factual sufficiency of the evidence of a material and substantial change of circumstances, we review the entire record to determine whether the great weight and preponderance of the evidence show that there has been such a change." *Id.* (citing *Dow Chem. Co.*, 46 S.W.3d at 242).

"When the appellate record contains a complete reporter's record, an appellate court reviews the trial court's findings of fact under the same standards for legal and

5

factual sufficiency that govern the review of jury findings." *Reisler v. Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.). "In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Id.* at 619 (citing *Mays v. Mays*, No. 13-05-00558-CV, 2007 WL 776684, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 15, 2007, pet. denied) (mem. op.)). "If an appellate court determines that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal." *Id.* at 619–620 (citing *Mays*, 2007 WL 776684, at *2).

## C.    Analysis

Jared challenges several findings of fact for legal and factual sufficiency. Those findings include "that [Jared] failed to offer sufficient evidence to prove his [g]ross [m]onthly [r]esources" and "that [Jared] did not present sufficient evidence to accurately identify his net resources."[4] While Jared acknowledges that an obligor may provide his gross monthly resources from which net monthly resources may be calculated, *see* TEX.

---

[4] The trial court made similar conclusions of law:

2.       The Court concludes that the burden of showing a material and substantial change of circumstances was on [Jared].

3.       The Court concludes that to show a substantial and material change of circumstances, the moving party must present evidence of the conditions that existed at the time of the order being modified, and the conditions that existed at the time the modification is sought.

. . . .

7.       The Court finds and concludes that [Jared] failed to offer sufficient evidence that any change in his circumstances was anything other than a temporary change; failed to offer sufficient evidence to accurately identify his resources and ability to pay child support.

6

FAM. CODE ANN. § 154.061, he argues that "[t]here is no requirement that in a modification proceeding the obligor provide BOTH."

Although we agree with Jared that nothing in the family code requires that an obligor provide both monthly gross and net resources, an obligor who moves to modify his child support does bear the burden to show the change in circumstances—specifically, his net monthly resources. *See In re N.H.N.*, 580 S.W.3d at 445. Here, although Jared testified his pay was reduced to 67% of his base pay, he did not provide clear evidence of either his gross or net monthly resources. *See* TEX. FAM. CODE ANN. § 154.063; *In re N.H.N.*, 580 S.W.3d at 445. Rather, he provided varying amounts of income that he had received over the last couple of years, ranging from approximately $134,000 per year to $7,000 per month. In Jared's closing request to the trial court, he asked that his child support obligation be based off his "current $5,070.81 a month income, which [he] believe[d] [would] take [his obligation] down to $651 a month." Even assuming this amount had been presented in evidence, it is not clear whether his monthly income constitutes gross or net resources. *See* TEX. FAM. CODE ANN. §§ 154.061, 154.062. Further, Jared failed to produce any evidence of amounts that would be deducted from his gross resources to establish his net monthly resources, such as health care or dental coverage for his children.[5] *See id.* § 154.062(d). Accordingly, we conclude that the trial court's finding that Jared failed to present sufficient evidence is supported by the record. *See In re N.H.N.*, 580 S.W.3d at 445; *Reisler*, 439 S.W.3d at 620. Jared's first issue is

---

[5] We note that although the trial court found that Jared had an obligation to support two other minor children. *See* TEX. FAM. CODE ANN. § 154.128. As neither party challenges this finding, we are bound by this finding even though there is no evidence to support it. *See Tex. Champps Americana, Inc. v. Comerica Bank*, 643 S.W.3d 738, 747 (Tex. App.—Dallas 2022, pet. denied).

overruled.

By his second issue, Jared argues that the trial court applied the wrong legal standard when it modified his child support amount. Namely, Jared posits that the trial court applied the standards relating to contempt proceedings for failure to pay child support through the following findings:

16. The Court finds that [Jared] did not show that he did not have other assets he could sell or liquidate in order to meet the reduced child support obligation.

17. The Court finds that [Jared] had other assets he could liquidate to meet his child support obligation, specifically a 401k.

. . . .

21. The Court finds that [Jared] has failed to exercise all reasonable efforts to meet the reduced child support obligation and concludes that the requested modification should be denied.[6]

While these findings appear to reflect the affirmative defense to a motion for contempt for failure to pay child support, *see* TEX. FAM. CODE ANN. § 157.008(c), we need not address the findings insofar as they demonstrate that the trial court applied the incorrect standard. *See* TEX. R. APP. P. 44.1(a); *In re Commitment of Jones*, 602 S.W.3d 908, 913–15 (Tex. 2020) (per curiam); *Reisler*, 439 S.W.3d at 619–20. Here, because we conclude there is sufficient evidence to support the trial court's finding that Jared failed to meet his burden, we cannot say the extraneous findings relating to his assets, rather than his resources, "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a); *In re Commitment of Jones*, 602 S.W.3d at 913–15. Jared's second issue is overruled.

---

[6] Jared cites other findings of fact and conclusions of law to support his contention, which we find unnecessary to review as they are not dispositive. *See* TEX. R. APP. P. 47.4.

8

# III.    JUDICIAL BIAS

By his third issue, Jared argues the trial court "made multiple remarks and questioned [Jared] directly in a manner that would lead any reasonable person to conclude the trial was not conducted in a fair and impartial manner." Moreover, Jared argues that "at times the [trial] court was actively advocating against [Jared] and in favor of [Kathleen], the child's mother, in a clear breach of its duties as a trial judge." Kathleen argues that Jared failed to preserve this issue and, even if it were preserved, the trial court did not show a deep-seated antagonism such that would require reversal.

## A.    Complained-of Conduct

Here, some of Jared's complained-of questions by the trial court may be indicative of the court's attempt to elicit information or evidence relating to intentional unemployment or underemployment *See* TEX. FAM. CODE ANN. § 154.066(a) ("If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor."). For example, the following colloquy occurred after Kathleen cross-examined Jared on his ability to work:

THE COURT:   What have you done to better yourself in these previous years from 2016 so that you just won't just be someone that's on the government take?

. . . .

[Jared]:    Actually, I've taken quite a few classes and trainings and stuff like that with the company I was with. I was hoping to—

THE COURT:   So why didn't you go and get a truck driver's license? They make good money. You can drive. You could do that; and that would better your lot, would it not?

9

| | |
|---|---|
| [Jared]: | I already had a good job and a good life and a good financial outlook prior to the injuries, and I don't know that— |
| THE COURT: | I'm not talking about prior. |
| [Jared]: | No. I don't know that being a truck driver would help with the hips that are slightly repaired and will need replacement. |
| THE COURT: | Well, I thought we established earlier that you can drive from Houston down to Victoria; you can drive to Goliad; but now if you get in a truck and drive it for money, it's going to hurt your hips. Does that sound reasonable? |
| [Jared]: | No, sir. There's a difference from driving a passenger vehicle for a few hours once a week or twice a week— |
| . . . . | |
| THE COURT: | Finish whatever you want to tell me, please. |
| [Jared]: | Okay. I'm going to college right now to finish—to stay in the same[,] similar line of work. I was looking to get other job promotions within the company. |
| THE COURT: | Whoa, whoa, wait. Wait. You lost me. You're going to college so you can do similar work. You mean when you graduate from college, you'll be able to drive a truck without your hips hurting— |
| [Jared]: | No, sir. |
| THE COURT: | —but you can't now? |
| [Jared]: | I am in an oil field and gas industry. |
| THE COURT: | Well, you just said, "When I finish my college, then I can work what I used to be able to work." |
| [Jared]: | Similar field, not similar role. It's a completely different capacity, sir. |
| THE COURT: | "Similar field," what does that mean? |
| [Jared]: | Right now, I'm working in hydrocarbons and oil field—I |

10

mean—not oil field. I'm sorry—oil refineries, chemical fields, chemical plants as an operator.

Jared also points to portions of the record during Kathleen's testimony, arguing that it demonstrates the trial court was "advocating" on Kathleen's behalf. During an exchange between Jared and Kathleen, Jared asked, "You do realize you're under oath today, [Kathleen]?" The trial court intervened:

THE COURT:   Ma'am—sir, ask your questions.

[Jared]:   Okay.

THE COURT:   Don't try to intimidate her with—

[Jared]:   No, sir. I'm just—

THE COURT:   I—

[Jared]:   Okay. I'm sorry.

THE COURT:   Did I ask you if you were under oath when you were testifying that you were staying home and not working?

[Jared]:   No, sir.

THE COURT:   Well, then, don't do it to her either.

[Jared]:   Okay.

Jared also complains that the trial court interrupted his questioning of Kathleen without objection from Kathleen:

THE COURT:   Is that a question, or is that a statement?

[Jared]:   No, sir. I'm asking if—

THE COURT:   No. You didn't ask a question. You said, "Since now you're getting less than that, this happens." Ask her a question.

. . . .

[Jared]:   Okay. So it looks to me like your situation—

11

THE COURT: That's not a question. That's a statement, "looks to me like."

[Jared]: Okay. All right. Okay. Well, I guess after that, then, I don't have anything else, then, your Honor.

THE COURT: All right.

## B. Applicable Law

"All parties have a right to a fair and impartial trial before a neutral judge." *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.) (citing *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi–Edinburg 1993) *pet. dism'd improvidently granted* 855 S.W.2d 260 (Tex. Crim App. 1994) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)); *see* U.S. CONST. amend. XIV; TEX. CONST. art. 1, § 13. We presume the trial judge was neutral and detached "in the absence of a clear showing to the contrary." *Earley*, 855 S.W.2d at 262.

"Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Dow Chem. Co.*, 46 S.W.3d at 240 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Not establishing bias or partiality are expressions of impatience, dissatisfaction, annoyance, and even anger. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* (cleaned up).

The Texas Supreme Court has recognized that "the discretion vested in the trial court over the conduct of a trial is great." *Id.* at 240–41. That discretion permits a trial court to "intervene to maintain control in the courtroom, to expedite the trial, and to prevent

what it considers to be a waste of time." *Id.* at 241. "In a bench trial, the judge may question witnesses to clarify facts on an issue that the judge must decide in fulfilling [his] role as factfinder." *Sklar v. Sklar*, 598 S.W.3d 810, 825 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see Trahan v. Trahan*, 732 S.W.2d 113, 115 (Tex. App.—Beaumont 1987, no writ) (citing *Stewart v. State*, 438 S.W.2d 560 (Tex. Crim. App. 1969)); *see also In re A.T.M.*, No. 13-21-00008-CV, 2021 WL 2584402, at *19 (Tex. App.—Corpus Christi–Edinburg June 24, 2021, no pet.) (mem. op.). However, "a trial judge should not act as an advocate" for another party. *Sklar*, 598 S.W.3d at 824.

Although parties are entitled to a fair and unbiased trial under both the United States and Texas Constitutions, even constitutional complaints may be waived by failure to preserve a complaint. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (declining to consider father's due process violation claim on appeal where he failed to raise it with the trial court); *In re C.T.*, 749 S.W.2d 214, 217 (Tex. App.—San Antonio 1988, no writ) (same).

## C.     Analysis

We recently addressed an identical situation and argument in a parental termination case. *See In re A.T.M.*, 2021 WL 2584402, at *19. In *A.T.M.*, we noted that "there is a narrow exception to error-preservation rules for certain 'fundamental' errors, including 'those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State.'" *Id.* (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006)). Ultimately, we concluded that "the claimant bears the burden to explain how any comments made by

the trial judge were incurable or would excuse the claimant's failure to preserve error." *Id.*

Similarly, here, Jared failed to object to the trial court's comments or questions and does not attempt to argue why they were incurable or would excuse his failure to preserve error. *See In re Commitment of Fontenot*, 536 S.W.3d 906, 918 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Dow Chem. Co.*, 46 S.W.3d at 241); *In re Commitment of Stuteville*, 463 S.W.3d 543, 557 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also In re A.T.M.*, 2021 WL 2584402, at *19. Moreover, Jared does not argue that preservation was unnecessary because the error was fundamental.[7] *See* TEX. R. APP. P. 38.1(i); *see also In re A.T.M.*, 2021 WL 2584402, at *19. However, considering the entire record, we cannot conclude that the trial court's questions and interruptions of Jared demonstrated a "deep-seated favoritism or antagonism that would make fair judgment impossible," which would be necessary for this Court to reverse the trial court's judgment. *See Liteky*, 510 U.S. at 555; *Dow Chem. Co.*, 46 S.W.3d at 240–41; *see also In re A.T.M.*, 2021 WL 2584402, at *19; *cf. In re L.S.*, No. 02-17-00132-CV, 2017 WL 4172584, at *16 (Tex. App.—Fort Worth, Sept. 21, 2017, no pet.) (mem. op.) ("[T]he trial judge's course of conduct throughout the entire proceeding showed a deep-seated antagonism for Father that violated Father's constitutional right to a fair trial, resulting in a judgment that neither this court nor the public generally could be confident was not improper.").

Although the trial court's choice of words appears to express impatience,

---

[7] Jared argues the appropriate standard of review considers (1) whether the trial court in fact committed a judicial impropriety, and (2) if so, whether the complaining party was probably prejudiced. *See, e.g.*, *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, *Metzger* and other similar cases involve comments made by the trial court in the presence of a jury, not a bench trial. *See id.*

14

annoyance, or dissatisfaction, the record as a whole demonstrates that the trial court was merely exercising its discretion over the conduct of a trial and fulfilling its role as a factfinder. *See Dow Chem. Co.*, 46 S.W.3d at 240 (providing expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality); *Sklar*, 598 S.W.3d at 825. Jared's third issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
10th day of August, 2023.

15